

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-1999

# Rego v. ARC Water Treatment

Precedential or Non-Precedential:

Docket 98-1386,98-1616

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Rego v. ARC Water Treatment" (1999). *1999 Decisions.* Paper 164.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/164

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 24, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1386 and 98-1616

MICHAEL REGO,
            Appellant in No. 98-1386

v.

ARC WATER TREATMENT COMPANY OF PA.,
a/k/a ARC WATER TREATMENT COMPANY,
a/k/a ARC COMPANY; ARC WATER TREATMENT
COMPANY OF MARYLAND, INC.

MICHAEL REGO

v.

ARC WATER TREATMENT COMPANY OF PA.,
a/k/a ARC WATER TREATMENT COMPANY,
a/k/a ARC COMPANY; ARC WATER TREATMENT
COMPANY OF MARYLAND, INC.

            Arc Water Treatment Company
            of Maryland, Inc.,

            Appellant in No. 98-1616

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 94-03734)
District Judge: Honorable Clifford Scott Green

Argued May 24, 1999

BEFORE: GREENBERG and ALITO, Circuit Judges ,
and ACKERMAN,* District Judge

(Filed: June 24, 1999)

Patricia V. Pierce
Catherine M. Reisman (argued)
Willig, Williams & Davidson
1845 Walnut Street
24th Floor
Philadelphia, PA 19103

Attorneys for Michael Rego

Anthony R. Sherr (argued)
Mayers, Mennies & Sherr
3031 Walton Road
P.O. Box 1547, Suite 330
Blue Bell, PA 19422

Attorneys for ARC Water Treatment
Company of Maryland, Inc.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter is before this court on Michael Rego's appeal
from a final judgment entered on April 10, 1998, in favor of
ARC Water Treatment Company of Maryland, Inc. ("ARC-
MD") on liability and on ARC-MD's appeal from an order
entered on June 23, 1998, denying its petition for
attorney's fees in this hostile working environment and
constructive discharge case under Title VII of the Civil
Rights Act of 1964, 42 U.S.C. SS 2000e et seq., and the
Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann.

_____

* Honorable Harold A. Ackerman, Senior Judge of the United States
District Court for the District of New Jersey, sitting by designation.

SS 951 et seq. (West 1991). The district court had jurisdiction over Rego's Title VII claims under 28 U.S.C. SS 1331 and 1343(a)(4) and 42 U.S.C. S 2000e-5(f)(3), and had supplemental jurisdiction over Rego's PHRA claims under 28 U.S.C. S 1367(a). We have jurisdiction under 28 U.S.C. S 1291.

The germane facts viewed in the light most favorable to Rego are as follows. On October 12, 1987, Rego began working at ARC Water Treatment Company ("ARC"), a predecessor to ARC-MD. At that time, ARC consisted of a Pennsylvania division with an office in Philadelphia, and a Maryland division with an office in Beltsville, Maryland. Joseph Cohen, the vice-president of ARC, essentially operated the Pennsylvania division, and Edwin Goldstein, the president of ARC, essentially operated the Maryland division. Goldstein, however, visited the Philadelphia office about once a week.

Rego, a man of Italian descent, worked as a serviceman in ARC's Philadelphia office but ARC never employed him in the Beltsville office. From the beginning of Rego's employment, his immediate supervisor, Warren Brooks, used derogatory ethnic slurs toward him and wrote him demeaning notes. In the spring of 1988, after Rego complained about Brooks' conduct, a meeting was held among Rego, Brooks, Goldstein, and Cohen to discuss the situation. Nevertheless, even after the meeting Brooks continued using ethnic slurs and sending Rego demeaning notes.

On June 28, 1991, or promptly thereafter, ARC was dissolved. On that date, pursuant to a comprehensive written agreement, its Pennsylvania assets and liabilities were transferred to a newly-formed corporation known as ARC Water Treatment Company of Pennsylvania ("ARC-PA") and its Maryland assets and liabilities were transferred to ARC-MD, a separate also newly-formed corporation. Cohen became the president of ARC-PA and Goldstein became the president of ARC-MD. Thus, the successor companies employed each of these executive officers at the location at which he had worked before ARC's dissolution. From June 28, 1991, until he resigned on March 12, 1992, Rego worked for ARC-PA out of its office in Philadelphia. Rego

never worked out of ARC's Maryland office or for ARC-MD. Apparently neither ARC-MD nor ARC-PA prospered because both ultimately filed Chapter 11 bankruptcy petitions.

On June 16, 1994, Rego filed his complaint under Title VII and the PHRA against ARC, ARC-PA, and ARC-MD, alleging damages from a hostile working environment and asserting that the defendants had constructively discharged him because of his national origin. Rego demanded a jury trial in his complaint. ARC-MD, however, requested a non-jury trial on Rego's PHRA claims, as well as on any Title VII claims based on actions that occurred prior to November 21, 1991, the date Congress amended Title VII to provide for jury trials in certain cases. See 42 U.S.C. S 1981a(c)(1). The district court granted ARC-MD's request and thus the parties tried the case both to the jury and the court.

At the close of Rego's case, ARC-MD moved for a judgment on partial findings under Fed. R. Civ. P. 52(c) or for a judgment as a matter of law under Fed. R. Civ. P. 50(a). ARC-MD argued that it could not be liable because (1) it never was Rego's employer, and (2) it was not a successor to ARC for purposes of liability to Rego. The district court granted ARC-MD's motion as it determined that ARC-MD had not employed Rego or discriminated against him, and that ARC-MD could not be liable under a successor liability theory.

The jury subsequently returned a verdict in favor of Rego against ARC and ARC-PA, and found that Rego suffered general damages of $25,000 for the period from October 12, 1987 to June 28, 1991, although the court found that he suffered no damages during that period. The jury's other awards were for back pay, front pay, general damages from June 29, 1991, until November 21, 1991, and general damages from November 21, 1991, into the future. The district court thereafter entered judgment on the verdict against ARC and ARC-PA for $265,000 and, in the same order, the district court entered judgment in favor of ARC-MD. Rego appeals from the judgment in favor of ARC-MD, but neither ARC nor ARC-PA has appealed. Neither ARC nor ARC-PA has satisfied the judgment.

After the court entered judgment in its favor, ARC-MD filed a motion for attorney's fees as a prevailing defendant

under the PHRA. The district court found that Rego did not act in bad faith in naming ARC-MD as a defendant, and thus denied the motion. ARC-MD appeals from that order.

## II. DISCUSSION

The parties disagree as to the standard of review that we should employ in reviewing the district court's order granting judgment in favor of ARC-MD. Rego urges us to conduct a plenary review, but ARC-MD maintains that the order is reversible only if clearly erroneous. This dispute stems from Rego's assertion that the district court wrongly denied him a jury trial on his PHRA claims. He argues that if the court allowed him a jury trial it could have entered a judgment in favor of ARC-MD only under Fed. R. Civ. P. 50(a). On the other hand, if the district court properly held a non-jury trial on Rego's PHRA claims, judgment in favor of ARC-MD could have been entered under Fed. R. Civ. P. 52(c).

In cases in which a district court enters a judgment under Rule 52(c), the district court can resolve disputed factual questions. Thus, in a Rule 52(c) case, a court of appeals reviews a district court's findings of fact for clear error, see Newark Branch, NAACP v. City of Bayonne, 134 F.3d 113, 119-20 (3d Cir. 1998) (Rule 52(a) case), and its conclusions of law de novo, MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 960 (2d Cir. 1998). On the other hand, if the district court enters judgment as a matter of law under Rule 50(a), a court of appeals' review is plenary. See Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 149 (3d Cir. 1998). Rule 50(a) provides that a court may grant judgment as a matter of law in a jury trial at the close of the evidence if it determines that there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 203 (3d Cir. 1996). Consequently, a court of appeals must view the evidence on an appeal from a judgment as a matter of law under Rule 50(a) in a light most favorable to the non-moving party and must give the non-moving party the benefit of all reasonable inferences that can be drawn in its favor. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). For reasons

5

that we set forth below, we are exercising plenary review of the judgment in favor of ARC-MD, the standard Rego urges that we adopt.

We review the district court's denial of ARC-MD's motion for attorney's fees under the PHRA for an abuse of discretion. See EEOC v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir. 1997) (reviewing attorney's fee award under Title VII); Hoy v. Angelone, 720 A.2d 745, 752 (Pa. 1998) (reviewing attorney's fee award under the PHRA). Thus, we defer to the district court's decision not to award attorney's fees "unless it has erred legally, or the facts on which the determination rests are clearly erroneous." L.B. Foster Co., 123 F.3d at 750.

As we noted above, at the close of Rego's case, ARC-MD moved for a judgment under Rule 52(c) or for a directed verdict under Rule 50(a). The district court found that Rego "had not produced evidence to show that either (1) ARC-MD had employed [Rego] or engaged in any discriminatory conduct towards [him]; or (2) ARC was liable to [him] such that ARC-MD could be liable under a successor liability theory." Accordingly, the court entered judgment in favor of ARC-MD.

While in view of the district court's determination with respect to the issues to be tried without a jury, it would have been logical for the court to have been ruling under Rule 52(c) with respect to Rego's PHRA claims and to his Title VII claims for the period prior to November 21, 1991, and Rule 50(a) for Title VII claims after that date, the court did not specify whether it was ruling under Rule 52(c) or Rule 50(a). Indeed, at one point the court indicated that ARC-MD was seeking summary judgment. In asserting that the district court had to have granted judgment, if at all, in favor of ARC-MD under Rule 50(a), and not Rule 52(c), Rego reasons that the district court denied him his Seventh Amendment right to a jury trial on his PHRA claims and that if there had been a jury trial the court could not have granted judgment in favor of ARC-MD under Rule 52(c) as that rule is applicable only in non-jury trials. Rather, Rule 50(a) would have applied, and he contends that ARC-MD failed to meet the standard to obtain a judgment under that rule. Obviously, a court properly might enter a judgment for

6

a party under Rule 52(c) that could not be justified under Rule 50(a), as the court may resolve disputed factual questions under Rule 52(c) but not Rule 50(a).

Rego is correct that Rule 50(a) applies in jury trials and Rule 52(c) applies in non-jury trials. Thus, it might be thought that we have to determine whether the district court correctly denied Rego's Seventh Amendment claim to a jury trial on his PHRA claim, so that we can decide whether to exercise a deferential standard of review. Yet, as we shall explain, we have no need to make that determination because we conclude that even at a jury trial ARC-MD would have been entitled to a judgment as a matter of law under Rule 50(a). It therefore follows that even if the district court erred in denying Rego a jury trial on his PHRA claims, the error "is harmless [because a judgment as a matter of law] would have been warranted." Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning, 934 F.2d 35, 40 n.3 (3d Cir. 1991); see also EEOC v. Corry Jamestown Corp., 719 F.2d 1219, 1225 (3d Cir. 1983) (stating that "denial of a trial by jury is reversible error unless a directed verdict would have been appropriate"). Accordingly, we will exercise plenary review.

The district court based its judgment in favor of ARC-MD on two distinct grounds. First, the district court concluded that ARC-MD could not be liable because it never employed Rego. The factual predicate for this finding is unassailable as there is no contrary evidence. Indeed, Rego acknowledges the point when he states that he is a former employee of ARC and ARC-PA. The district court also found that ARC-MD could not be liable under a theory of successor liability, a conclusion that takes us to the pivotal issue on this appeal.

In general, in the context of employment discrimination, the doctrine of successor liability applies where the assets of the defendant employer are transferred to another entity. See Rojas v. TK Communications, Inc., 87 F.3d 745, 750 (5th Cir. 1996). The doctrine allows an aggrieved employee to enforce against a successor employer a claim or judgment he could have enforced against the predecessor. See Musikiwamba v. Essi, Inc., 760 F.2d 740, 750 (7th Cir. 1985) (successor liability under 42 U.S.C. S 1981). The

7

doctrine is derived from equitable principles, and fairness is the prime consideration in application of the doctrine. See Criswell v. Delta Air Lines, Inc., 868 F.2d 1093, 1094 (9th Cir. 1989) (successor liability under the ADEA). The policy underlying the doctrine is "to protect an employee when the ownership of his employer suddenly changes." Rojas, 87 F.3d at 750.

Ordinarily, however, absent a contractual obligation to do so, a successor corporation does not assume the liabilities of its predecessor. In this case, ARC-MD did assume certain of ARC's liabilities but its contractual assumption is not germane, as the assumption of liability was only to the Maryland operations and ARC employed Rego in Pennsylvania. Thus, we look to less specific controlling legal principles which recognize that the successor will be liable if it is a "mere continuation" of its predecessor. B.F. Goodrich v. Betkoski, 99 F.3d 505, 519 (2d Cir. 1996) (successor liability under CERCLA). It has been said that in an employment discrimination case, a court should consider three principal factors before making a successor liability determination: "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly." Criswell, 868 F.2d at 1094.

Rego argues that ARC-MD is liable for ARC's and ARC-PA's acts both before and on or after June 28, 1991, the date that ARC-MD and ARC-PA took over ARC's assets and liabilities. But ARC-MD cannot be directly liable for any discriminatory conduct that occurred on or after that date, as Rego suffered his injuries at that time while in ARC-PA's employ. Furthermore, ARC-MD is not a successor to ARC-PA and thus cannot be liable in that capacity. Accordingly, ARC-MD could be liable for discriminatory conduct on or after June 28, 1991, only as a successor to ARC.

Similarly, ARC-MD cannot be directly liable for any discriminatory conduct before June 28, 1991, as it did not exist until that time. However, inasmuch as ARC-MD is a successor to ARC, in some circumstances a court could impose successor liability on ARC-MD for injuries Rego suffered in ARC's employ prior to June 28, 1991.

8

Accordingly, we focus on whether ARC-MD can be liable as a successor to ARC for periods both before and after June 28, 1991, as it is only in that capacity that it could be liable to Rego.

This case does not involve the usual situation in which a predecessor employer transfers its assets to a single successor. In that circumstance, fairness may require that the successor be liable for its predecessor's discriminatory acts, for otherwise the injured employee may be left without a party against whom the employee may assert his claim. Here, however, the predecessor, ARC, was a single corporation with two separate divisions which became two separate entities one of which, ARC-PA, became Rego's employer and has been adjudged to be liable. Thus, even if ARC-MD is not liable as a successor, Rego has not been left without a legally responsible party, although Rego will not be able to obtain satisfaction of his judgment from ARC-PA.

Moreover, as far as Rego's employment is concerned, ARC-MD is not a continuation of ARC. This point is important because a lack of continuity in the operations and work force of the predecessor and the successor weighs against imposing successor liability. Criswell, 868 F.2d at 1094. We emphasize that prior to June 28, 1991, ARC was a single corporation with a Pennsylvania division in Philadelphia and a Maryland division in Beltsville, Maryland. After that date, ARC-PA took over the Pennsylvania operations and before and after that date ARC and then ARC-PA employed Rego in Pennsylvania. Thus, whatever might be true with respect to other claimants, an objective analysis demonstrates that as to Rego there is no continuity between ARC and ARC-MD. In this regard, we see no reason why successor liability must be imposed on an all-or-nothing basis with respect to a predecessor's creditors.

It is important to recognize that there are other unusual circumstances in this case which militate against imposing successor liability on ARC-MD. After June 28, 1991, ARC-PA employed Rego until he resigned on March 12, 1992. Thus, for a period of more than eight months ARC-MD was powerless to take steps by altering Rego's working conditions to forestall this litigation. Rather, it was ARC's

other successor, ARC-PA, that could have taken these steps. Conceivably, remedial measures during that eight-month period might have been successful because however odious Rego's working conditions may have been prior to June 28, 1991, it was not until March 12, 1992, that he resigned and it was only thereafter that he initiated these proceedings.

We acknowledge that a reasonable jury could have concluded that ARC-MD had notice of ARC's legal obligations to Rego, as Rego complained to Goldstein in the spring of 1988 about Brooks' conduct. But this factor standing alone would not be a basis to deny ARC-MD judgment as a matter of law, particularly inasmuch as Rego does not contend that prior to June 28, 1991, he hadfiled any administrative or judicial proceeding against ARC. Furthermore, there is no basis to conclude that ARC was divided into two corporations for the purpose of impeding Rego's ability to recover for any wrong done to him.

Significantly, Rego seeks to hold ARC-MD liable on the entire judgment for $265,000 entered on the jury verdict even though, according to the jury, his damages were only $25,000 prior to June 28, 1991. Thus, Rego seeks to recover the bulk of his judgment from ARC-MD on a successor liability theory for damages he suffered after rather than before ARC-MD became a successor to ARC. Therefore, this case differs from the usual situation in which an employee seeks to impose liability on a successor for damages he suffered before the succession. While in some situations it might be appropriate to allow a recovery against a successor for damages assessed against a predecessor for a period following the succession, at the very least a court should pause before imposing such liability.

Overall, based on the totality of the unusual circumstances, we are satisfied that as a matter of law ARC-MD cannot be liable to Rego, and that even at a jury trial ARC-MD would have been entitled to a judgment as a matter of law on Rego's claims against it under Rule 50(a). In reaching our conclusion, we emphasize that each successor liability "case must be determined on its own facts," Musikiwamba, 760 F.2d at 750, and we have done

10

exactly that. Consequently, we need not consider whether the district court erred in denying Rego a jury trial under the PHRA as any error in doing so was harmless.

We have considered ARC-MD's cross-appeal and find it to be without merit. Under the PHRA, a court may award a prevailing defendant attorney's fees and costs if the plaintiff brought the complaint in bad faith. See 43 Pa. Cons. Stat. Ann. S 962(c.3) (West Supp. 1999). We cannot say that the district court abused its discretion in holding that that standard was not met. We will not fault Rego for not having made prior to this litigation the intricate substantive analysis we make in this opinion.

III. CONCLUSION

For the foregoing reasons we will affirm the orders of April 10, 1998, and June 23, 1998. The parties will bear their own costs on this appeal.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11