128 F.Supp.2d 609 (2001)
Florine KORLIN, Plaintiff,
v.
CHARTWELL HEALTH CARE, INC., et al., Defendants.
No. 4:97CV2040 SNL.
United States District Court, E.D. Missouri, Eastern Division.
January 31, 2001.
*610 James G. Nowogrocki, St. Louis, MO, for plaintiff.
Ronald R. Payne, Hesse and Jones, Dallas, TX, Terry A. Bond, Partner, Frankel and Rubin, Clayton, Joseph H. Guffey, Sonni L. Fort, Husch and Eppenberger, St. Louis, MO, for defendants.

MEMORANDUM OPINION
LIMBAUGH, Senior District Judge.
This matter is before the Court on defendant Colonial Pavilion's motion to dismiss for lack of jurisdiction over the subject matter[1] and for summary judgment (# 53) and defendant Leland Health Care's motion for judgment on the pleadings (# 71). Plaintiff filed suit against Chartwell Health Care, Inc. and Colonial Nursing Center, Inc. for violation of the Age Discrimination in Employment Act (ADEA) and the Missouri Human Rights Act (MHRA). Plaintiff added Colonial Pavilion, L.L.C. and Leland Health Care, L.L.C. as defendants under the theory of successor liability.

*611 Standard of Review

I. Summary Judgment
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Because discrimination cases often turn on inferences rather than on direct evidence, the Courts are particularly deferential to the non-movant. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994). Therefore, summary judgment should seldom be used in an employment-discrimination case. Id. at 1341. However, summary judgment motions "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).
Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).

II. Judgment on the Pleadings
Judgment on the pleadings is proper when the moving party clearly shows there are no material factual issues and the moving party is entitled to judgment as a matter of law. Franklin High Yield Tax-Free Income Fund v. County of Martin, Minn., 152 F.3d 736, 738 (8th Cir.1998). The Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party. United States v. Any and all Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir.2000). The Court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as, materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999). The Court should grant the motion only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir.1990).

Background
Colonial Nursing Center, Inc. (Colonial Nursing) is a subsidiary of Chartwell Health Care, Inc. (Chartwell). Colonial Nursing operated a nursing home at 894 Leland in University City, Missouri where the plaintiff worked from 1972 to 1996. *612 Colonial Healthcare Center, Inc. (Colonial Healthcare) owns the real estate where the nursing home sits. Plaintiff claims she was constructively discharged on September 16, 1996, as a result of a hostile work environment with regard to her age. On October 3, 1997, plaintiff filed her Complaint naming Chartwell and Colonial Healthcare as defendants. On October 17, 1997, plaintiff realized she had made a mistake and filed a First Amended Complaint which termed Colonial Healthcare and added Colonial Nursing as a defendant. In late July of 1998, defendants Colonial Nursing and Chartwell abandoned the nursing home, and the State of Missouri appointed Colonial Healthcare, the owner of the real estate, as emergency receiver.
Morris Esformes, a principal shareholder in Colonial Healthcare and the individual who ran the operations for the receiver, contacted Colonial Pavilion, L.L.C. (Pavilion) to inquire as to whether it would be interested in subleasing the facility at 894 Leland and operating it as a nursing home. Negotiations ensued between Colonial Healthcare, the receiver, and Pavilion. Neither Chartwell, nor Colonial Nursing participated in negotiations as they had already abandoned the property. Pavilion agreed to operate the nursing home and entered a sublease agreement with Colonial Healthcare. The sublease was contingent upon Pavilion receiving a license from the Missouri Department of Social Services, Division of Aging. Due to the exigent circumstances, there was also a Management Agreement between Colonial Healthcare, as receiver, and Pavilion which was to terminate as of the date Pavilion obtained a Temporary Operating Permit from the Department of Social Services.
Pavilion agreed to pay the employees of the nursing home the last payroll in July because Chartwell and Colonial Nursing had failed to do so, and everyone was concerned that the employees would quit. Pavilion officially began operating the nursing home on August 14, 1998. Pavilion immediately terminated the previous medical director and entered an agreement with Long Term Care Physicians, naming a new doctor as medical director. On August 29, 1998, Pavilion terminated the previous administrator, previous director of nurses, three L.P.N.'s, and an office employee, and hired new employees to take their places. Pavilion also terminated the housekeeping supervisor and the marketing supervisor on August 15, 1998, and promoted someone to housekeeping supervisor and hired someone new to be marketing supervisor. By October 15, 1998, over half of Chartwell's employees at the nursing home had been terminated, and new employees had been hired by Pavilion to replace them.
On October 5, 1998, Chartwell had an involuntary Chapter 7 Bankruptcy Petition filed against it, and as a result, on November 3, 1998, the proceedings were stayed. Plaintiff then filed a Second Amended Complaint on November, 16, 1998, adding Pavilion as a defendant. The members of Pavilion claim they had no notice or knowledge of plaintiff's claim until they received a copy of the Complaint naming Pavilion as a defendant. Mark Rubin was the registered agent for Colonial Healthcare, the owner of the real estate, and the company that was inadvertently sued by plaintiff originally in October 1997 before it was dismissed two weeks later. Therefore, he received the original copy of the Complaint while acting as Colonial Healthcare's registered agent. He was also the registered agent of Pavilion which was formed on August 4, 1998, immediately prior to it taking over the nursing home.
Then, on April 24, 1999, Pavilion, Leland Healthcare, L.L.C. (Leland), and Colonial Healthcare entered into a Sublease Termination Agreement whereby Leland took over operation of the nursing home in place of Pavilion. Pursuant to the Sublease Termination Agreement, Pavilion retained any and all assets, including accounts receivable for the time period before April 24, 1999. The agreement *613 also included specific provisions for "No Assumption of Liabilities" and "Indemnifications" for Leland. Pavilion represented in the Agreement that it had no knowledge of "any reasonable basis for any claim" against it for violation of the ADEA.
On January 5, 2000, plaintiff added Leland as a defendant in her Third Amended Complaint. Leland claims it had no knowledge of plaintiff's lawsuit prior to receiving plaintiff's Complaint. Morris Esformes is one of three owners of Leland. He is also a limited partner in Colonial Healthcare, the owner of the real estate, and the company that was inadvertently sued by plaintiff only to be dismissed soon thereafter.

Discussion
Plaintiff filed its lawsuit against Pavilion and Leland based on a successor liability theory. The United States Supreme Court has applied the doctrine of successor liability in unfair labor practices under the National Labor Relations Act (NLRA). Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); Golden State Bottling Co., Inc. v. National Labor Relations Board, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Although the Supreme Court has never ruled on whether its reasoning also applies to discriminatory practices by employers, almost all Circuits have assumed that it does. See Equal Employment Opportunity Comm'n v. MacMillian Bloedel Containers, Inc., 503 F.2d 1086 (6th Cir.1974) (first to apply a successor liability theory under Title VII, reasoning that Title VII was molded to a large degree after the NLRA); see also, Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396 (3rd Cir.1999); Rojas v. TK Communications, Inc., 87 F.3d 745 (5th Cir.1996); Equal Employment Opportunity Comm'n v. G-K-G, Inc., 39 F.3d 740 (7th Cir.1994); In re National Airlines, Inc., 700 F.2d 695 (11th Cir.1983); Trujillo v. Longhorn Mfg. Co., Inc., 694 F.2d 221 (10th Cir.1982); Dominguez v. Hotel, Motel, Restaurant & Miscellaneous Bartenders Union, Local # 64, 674 F.2d 732 (8th Cir.1982); Forde v. Kee Lox Mfg. Co., Inc., 584 F.2d 4 (2nd Cir.1978); Slack v. Havens, 522 F.2d 1091 (9th Cir.1975).
The doctrine of successor liability is derived from equitable principles, and fairness is the prime consideration in application of the doctrine. Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 401 (3rd Cir.1999); Criswell v. Delta Air Lines, Inc., 868 F.2d 1093, 1094 (9th Cir. 1989). It would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the successor did not have the opportunity to protect itself. Musikiwamba v. ESSI, Inc., 760 F.2d 740, 750 (7th Cir.1985); Criswell, 868 F.2d at 1094. A balance must be struck between conflicting legitimate interests of the bona fide successor and the free transfer of capital, and the affected employee and the underlying labor law policy. Golden State Bottling, 414 U.S. at 181, 94 S.Ct. at 423; Leib v. Georgia-Pacific Corp., 925 F.2d 240, 247 (8th Cir.1991) (applying successor liability under the veterans' reemployment law). Courts have chosen a case-by-case approach in determining whether or not successor liability should apply in any given case. Leib, 925 F.2d at 247; Equal Employment Opportunity Comm'n v. MacMillian Bloedel Containers, Inc., 503 F.3d 1086, 1092 (6th Cir.1974). The Supreme Court has stated that emphasis on the facts of each case is especially appropriate in light of the difficulty of the successorship question, and the myriad factual circumstances and legal contexts in which it can arise. Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974).
Courts have looked at a variety of factors while trying to balance the employee's interest and the successor's interest. These factors have been grouped into three main factors: 1) whether there has *614 been a continuity in operations and work force between the successor and predecessor employers; 2) whether the successor had notice of the charge or pending lawsuit prior to acquiring the business; and 3) whether the predecessor has the ability to provide adequate relief directly.[2]Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 402 (3rd Cir.1999); Rojas v. TK Communications, Inc., 87 F.3d 745, 750 (5th Cir.1996); Criswell v. Delta Air Lines, Inc., 868 F.2d 1093, 1094 (9th Cir.1989).
Despite all these factors, most decisions in this area of law skim over what this Court believes is a vital requirement when applying the theory of successorship liability.[3] That factor is that there must be some type of sale, merger, or consolidation.[4] There must be some type of privity between the predecessor and successor employer. The Supreme Court in addressing successor liability in unfair labor practices, has stated that it is unnecessary to distinguish among mergers, consolidations, and purchases of assets so long as there is a continuity in the employing industry. Golden State Bottling, 414 U.S. at 182 n.5, 94 S.Ct. at 424. However, the Court went on to emphasize that the successor's potential liability is a matter which can be reflected in the price he pays for the business, or in an indemnity clause in the sales contract which would indemnify him for liability arising from the seller's unfair labor practices. Id. at 185, 94 S.Ct. at 425. This is impossible to do if there is no sale or contract between the predecessor and successor.
The Eighth Circuit has held that some sort of sale must occur to form a predecessor-successor relationship. Whitmore v. O'Connor Management, Inc., 156 F.3d 796, 799 (8th Cir.1998) (holding that plaintiff's theory was flawed because "there was no sale of a business creating a predecessor-successor relation between the two corporations")[5]. The Eighth Circuit has only handed down one decision specifically addressing the issue of successor liability in discriminatory employment actions. Dominguez v. Hotel, Motel, Restaurant & Miscellaneous Bartenders Union, Local # 64, 674 F.2d 732 (8th Cir.1982). In Dominguez, the plaintiff brought suit against the defendant, alleging it was responsible under the doctrine of successor liability, for sexually discriminatory employment practices by the previous operator of the Holiday Inn where she worked as a waitress. Id. at 732. The new owners of the Holiday Inn, purchased the hotel at a foreclosure sale.[6] The Court found that the two businesses *615 were substantially the same in their operations and in their workforce. However, the Court focused on two facts in holding that the successor business was not liable for the predecessor's discriminatory actions. The first was that the successor had no knowledge of the pending charges. The second was that the successor acquired the hotel at a public foreclosure sale. Id. at 733. The Court's focus on the public sale implies its concern for the lack of privity between the predecessor and successor, and the inability of the successor to protect itself in negotiating the sale.
In our present case, there was no sale of assets between Chartwell or Colonial Nursing, and Pavilion. Pavilion did not even have any contact with its predecessor. Chartwell and Colonial Nursing abandoned the nursing home and Colonial Healthcare negotiated a separate sublease with Pavilion to take over operations of the nursing home. Pavilion was not in a position to pay a lower price, and could not have obtained an indemnity clause from Colonial Healthcare which would indemnify it for liability arising from Chartwell and Colonial Nursing's discriminatory labor practices.
Likewise, Leland had no contact with Chartwell or Colonial Nursing. It did have contact with Pavilion when it entered a sublease agreement in which Pavilion was a party. However, the Agreement specified in a separate provision that Pavilion retained any and all assets, including accounts receivable. There was no sale of assets or business. Leland simply agreed to take over the operations of the nursing home, and sublease the property from Colonial Healthcare. The Court finds that it would not be equitable, nor consistent with Supreme Court and Eighth Circuit precedent, to hold Pavilion or Leland liable for Chartwell and Colonial Nursing's discriminatory employment practices when there was no privity, nor sale of assets, between the predecessors and successors.
However, the Court would still like to address the factors traditionally considered in cases where successor liability is applied in the discriminatory employment context. The first factor is a continuity in operations and workforce between the successor and predecessor employers.[7] Both Pavilion and Leland had a continuity in business operations. This is inevitable since the business involved is a nursing home. However, the Supreme Court has not only focused on the continuity in the business operations, but also the continuity in the workforce. See Howard Johnson, 417 U.S. at 263-64, 94 S.Ct. at 2244 (whether the successor employer hires a majority of the predecessor's employees can determine the legal obligations of the successor). Pavilion changed much of the workforce, especially in the supervisory and management area, in the first two months that it took over operations of the home. Under normal circumstances, this time frame might seem too long. However, Pavilion did not have the choice of shutting down the home for a couple weeks, so that it could evaluate the situation, and hire its own people. It appears to the Court that Pavilion changed the majority of the workforce as quickly and efficiently as it could. It is logical that by the time Leland took over the operations there was even less of the same workforce as there had been under Chartwell and Colonial Nursing.
The second important factor when analyzing successor liability is whether the successor had notice of the charge or pending lawsuit prior to acquiring the business.[8] Plaintiff argues that there is a *616 genuine issue of material fact as to whether Pavilion had notice of the lawsuit. Plaintiff believes that Pavilion could have had notice through its registered agent, Mark Rubin. Rubin was served with the original Complaint from this lawsuit while acting as registered agent for Colonial Healthcare. Colonial Healthcare was voluntarily dismissed two weeks later after plaintiff realized she named the wrong party. Mr. Rubin was then involved with organizing Pavilion L.L.C. and acting as Pavilion's registered agent. Plaintiff cites to Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin Inc., 59 F.3d 48 (7th Cir. 1995), for the proposition that the notice prong can be satisfied when the same individual serves as the registered agent for both the predecessor and successor corporations. However, the Court finds two problems in charging Pavilion with notice under the particular circumstances of this case.
The first problem is the burden the Court would be imposing on future registered agents. Plaintiff is asking the Court to hold registered agents accountable with the knowledge of lawsuits filed against other defendants whom they are not representing as a registered agent. Despite plaintiff's characterization, this is not a situation where the registered agent is the same for the predecessor and successor employer. Plaintiff is arguing that Rubin had knowledge of plaintiff's lawsuit against Chartwell and Colonial Nursing because he was acting as registered agent for Colonial Healthcare who was mistakenly sued at the time the original Complaint was filed against Chartwell. Often times someone is a registered agent for many different corporations. If the Court accepts plaintiff's reasoning, we would charge these agents with knowledge of pending lawsuits against any defendant which might at one time have been named as a defendant along with one of the agent's corporations. There is no evidence that Mr. Rubin knew what happened to the lawsuit after Colonial Healthcare was dismissed in October of 1997. The lawsuit could have been dismissed or settled prior to August of 1998.
The second problem is that Mark Rubin was not an owner or officer of Pavilion. He was simply its registered agent. Even if he had knowledge of the lawsuit pending against Chartwell and Colonial Nursing, the Court is hesitant to impute that knowledge to Pavilion. Notice to Rubin in regards to lawsuits filed against Pavilion, is obviously imputed, but Rubin's knowledge of lawsuits against other corporations should not be charged to Pavilion. Plaintiff's only support, Chicago Truck Drivers, involved an individual who was the registered agent for the predecessor corporation, as well as, the son of the owner of the predecessor corporation. This same individual was President and Secretary of the successor corporation, not simply the registered agent. 59 F.3d at 49. However, in the present case, Rubin had absolutely no relationship with Chartwell, the predecessor corporation, and he was only a registered agent for Pavilion. The Court finds that this does not satisfy the notice prong of successor liability.
Plaintiff asserts that Leland had notice of the pending lawsuit, but it is unclear whether Leland, as the second successor, needs notice of the original lawsuit filed against Chartwell and Colonial Nursing or notice of the lawsuit filed against Pavilion. Nevertheless, plaintiff alleges that Leland had notice because Morris Esformes is a general partner of Colonial Healthcare which was inadvertently sued in October of 1997 before being dismissed two weeks later. Esformes is also president of Leland *617 which took over the operations of the nursing home in April of 1999. The Court is hesitant to say that Esformes had notice because his partnership was wrongly named in a lawsuit which also named Chartwell a year and a half prior to Leland taking over the property. However, the Court does not need to decide this issue because of the other reasons stated herein which deny plaintiff a theory of successor liability.
The last factor is whether the predecessor has the ability to provide adequate relief. This prong is satisfied as Chartwell and Colonial Nursing are presently going through bankruptcy proceedings. However, at least one court has stated that the predecessor's ability to provide some relief prior to the transfer is also one factor to be considered in determining if successor liability should be imposed. See Musikiwamba v. ESSI, Inc., 760 F.2d 740, 750 (7th Cir.1985). The Seventh Circuit reasoned that the public has a substantial interest in the free transfer of capital and the reorganization of unprofitable businesses. Imposing liability on a successor when a predecessor could have provided no relief whatsoever is likely to severely inhibit the reorganization or transfer of assets of a failing business. Id. at 750-51. The Court also observed that just as an employee should not be made worse off by a change in the business, neither should an employee be made better off. Id. at 750. The Court finds the Seventh Circuit's reasoning persuasive. The plaintiff could not have recovered anything against her original employer even if the transfer had never occurred. Courts have applied successor liability because an employee's rights should not be "vitiated by the mere fact of a sudden change in the employer's business." Rojas, 87 F.3d at 750; Musikiwamba, 760 F.2d at 750. However, in the present situation, the employee was left without relief prior to the change in Chartwell's business.

Conclusion
Although plaintiff is left without relief, the Court cannot justify applying successor liability under the present facts and circumstances. A balancing of interests is required and there is very little weighing in the favor of the plaintiff. She is in no worse of a condition now than she was prior to Pavilion and Leland taking over the nursing home. On the other hand, Pavilion and Leland could not have protected themselves from liability arising from Chartwell and Colonial Nursing's discriminatory practices because there was no sale of assets, nor any negotiating between Pavilion or Leland and Chartwell. Pavilion had no notice prior to taking over the nursing home facility, and because of the emergency situation in which it took over, there was not much time to use due diligence in discovering pending litigation. Pavilion also changed much of the workforce in the first two months it began operating the nursing facility, especially the supervisory positions. The Court also questions whether it could legally find a second successor liable, if it found the first successor not liable. In any event, the Court holds that the facts and circumstances of the present case do not support the application of successor liability to either Pavilion or Leland. Therefore, the Court finds as a matter of law that Pavilion and Leland cannot be held liable for Chartwell and Colonial Nursing's discriminatory practice.
NOTES
[1] Pavilion, in its support for its motion to dismiss, simply states that the motion "is based upon statements by certain legal scholars that Colonial Pavilion, L.L.C. is not an `employer' within the meaning of 29 U.S.C. § 630(b) and since it is not an employer, there wouldn't be any jurisdiction over the subject matter." This one sentence argument is not sufficient to succeed in a motion to dismiss. The Court is choosing to address only Pavilion's motion for summary judgment.
[2] Applying successor liability to a second successor presents a variety of legal problems. The first is whether the Court should analyze the relationship between the original employer and the second successor, or the first successor and second successor when applying these various factors. The second question becomes whether the second successor could be held liable after applying these factors if the first successor is found not to be liable. The Court discovered no authority for these legal questions. However, the Court finds it unnecessary to rule on these issues because Leland's liability can be resolved on other grounds.
[3] Some cases simply state that the doctrine applies when "the assets of the defendant employer are transferred to another entity," then follow with an analysis of the factors. See Rego, 181 F.3d at 401; Rojas, 87 F.3d at 750.
[4] The Sixth Circuit has held that the lack of a sale is one of the factors to which a court can look, but it is not in and of itself determinative. Terco, Inc. v. Federal Coal Mine Safety and Health Review Comm'n., 839 F.2d 236, 239 (6th Cir.1987). In Terco, both the predecessor and successor corporations were entwined in a very unusual set of facts long before the transfer in business occurred. Id. at 237-38. This Court believes that the rule in Terco is an exception which should only be applied if the facts make it equitable to do so.
[5] In Whitmore, the plaintiff argued that her theory was "analogous" to successor liability, while the Court compared her innovative theory to predecessor liability. Id. at 799. Rather than a sale, the "successor" business simply took over the management of a food court at the mall where plaintiff was employed.
[6] A Missouri Court appointed a receiver who operated the Holiday Inn until defendant acquired it at the public sale. Id. at 733 n.1.
[7] In analyzing this factor, courts have looked at whether the new employer used the same plant; whether he used the same supervisory personnel; whether the same jobs exist under substantially the same working conditions; whether it uses the same machinery, equipment, and methods of production; and whether the same product is produced. Rojas, 87 F.3d at 750.
[8] It is unclear what type of notice is needed to fulfill this requirement. In Dominguez, the Eighth Circuit held that defendant had "no direct or indirect knowledge" of the lawsuit, but did not further explain what was required. Id. at 733. At least one court has implied that the burden would be on the successor to exercise due diligence in finding out from the predecessor all potential and actual liabilities. Musikiwamba, 760 F.2d at 752.