*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RONALD COBB,

*Plaintiff-Appellant,*

*v.*

No. 05-6196

CONTRACT TRANSPORT, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 04-00305—Karl S. Forester, District Judge.

Argued: June 9, 2006

Decided and Filed: June 28, 2006

Before: MOORE, COLE, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** David R. Marshall, Lexington, Kentucky, for Appellant. Scott J. Beattie, PEDDICORD, WHARTON, SPENCER & HOOK, Des Moines, Iowa, for Appellee. **ON BRIEF:** David R. Marshall, Lexington, Kentucky, for Appellant. Scott J. Beattie, PEDDICORD, WHARTON, SPENCER & HOOK, Des Moines, Iowa, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiff, Ronald Cobb, appeals a July 13, 2005 final judgment of the United States District Court for the Eastern District of Kentucky, granting Defendant, Contract Transport, Inc.'s, motion for summary judgment and dismissing Plaintiff's action brought pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54. The district court dismissed Plaintiff's action on the ground that Plaintiff was not an "eligible employee" within the meaning of the FMLA. For the following reasons, we hold that Plaintiff is an "eligible employee" within the meaning of the FMLA and **REVERSE** the order of the district court.

## I.
## BACKGROUND

Plaintiff began working as a truck driver for Byrd Trucking, a Texas corporation, in July 2000. At that time, Byrd had a contract with the United States Postal Service ("USPS") to deliver mail between Denver and Philadelphia. Plaintiff was assigned to drive a truck carrying mail along

1

this route. Plaintiff would pick up a truck carrying mail from another driver at a truck stop near his home in Mt. Sterling, Kentucky and deliver the mail to a post office depot in Philadelphia. In Philadelphia, Plaintiff would pick up a new batch of mail and take that mail to Mt. Vernon, Illinois. In Mt. Vernon, Plaintiff would meet up with another truck carrying mail from Denver. Plaintiff and the truck driver from Denver would switch trucks, and Plaintiff would drive the new truck back to Mt. Sterling, Kentucky, while the truck from Philadelphia would continue on to Denver with a new driver.

In June 2003, Defendant, Contract Transport, Inc., an Iowa corporation, underbid Byrd for a new contract on the Denver-Philadelphia route. Defendant's contract with USPS was a two-year contract. The contract specified in detail the manner in which Defendant was to conduct its business. It specified, among other things: (1) the type of truck Defendant was required to use; (2) hiring criteria for truck drivers; and (3) employee wages, hours, and health insurance.

To staff the Denver-Philadelphia route, Defendant hired truck drivers formerly employed by Byrd on the Denver-Philadelphia route. Byrd gave Defendant a list of its drivers employed on the route and advised its employees to contact Defendant if they wanted to keep driving on the route. Defendant also placed advertisements for truck driving positions in the newspaper. Defendant's co-owner and employee, Jean Nible, estimates that the majority of drivers employed on the route formerly worked for Byrd.

Plaintiff was one of Defendant's hires for the Denver-Philadelphia route. He received assignments from Defendant's dispatcher, who was located in Des Moines, Iowa. Otherwise, he conducted his route in the same manner under Defendant as he had under Byrd Trucking. He continued to use relay points in Mt. Sterling, Kentucky, Mt. Vernon, Illinois, and Philadelphia, Pennsylvania. In fact, he continued to the use the exact same public truck stop in Mt. Sterling, Kentucky to pick up trucks from Denver.

In the fall of 2003, Plaintiff began having stomach pain. On December 19, 2003, Plaintiff's doctor, Dr. Hall, determined that Plaintiff's gallbladder required immediate removal. Dr. Hall scheduled Plaintiff for surgery with Dr. Burton on the first available date, December 22, 2003. That same day, December 19, 2003, Plaintiff called his dispatchers in Des Moines, Iowa, George, Bob, and Jason, to explain that he needed leave on December 22, 2003. The dispatchers instructed Plaintiff to contact Jean Nible or Human Resources, also located in Des Moines, Iowa.

On December 29, 2003, Plaintiff called Jean Nible and informed her that he was unable to work and that he had been unable to work since December 19, 2003. Jean Nible responded that she would send him paperwork for short term disability. Along with the paperwork, Jean Nible sent Plaintiff a memorandum terminating his employment. The memorandum stated that Defendant considered Plaintiff to have voluntarily resigned as of December 19, 2003 because he had "ma[de] himself unavailable for work." (J.A. at 203.)

On May 26, 2004, Plaintiff filed a complaint in a Kentucky state court, alleging that Defendant violated the FMLA in terminating him. Defendant removed the action to federal district court and discovery ensued. In June 2005, Defendant moved for summary judgment on the ground that Plaintiff was not an "eligible employee" within the meaning of the FMLA. Specifically, Defendant contended that Plaintiff was not an "eligible employee" because he had worked for Defendant for less than twelve months and because his "worksite" was located in Mt. Sterling, Kentucky, where Defendant employed less than fifty employees. Plaintiff responded on June 29, 2005, arguing that he was an "eligible employee" because the three years he worked for Defendant's predecessor, Byrd Trucking, counted toward his FMLA eligibility under the theory of successor liability. Additionally, Plaintiff argued that he did not work at a worksite with less than fifty employees because Des Moines, Iowa, not Mt. Sterling, Kentucky, constituted his "worksite."

On July 13, 2005, the district court issued an opinion and order granting Defendant's motion for summary judgment. The district court held that Plaintiff was not an "eligible employee" within the meaning of the FMLA because he had worked for Defendant for less than 12 months. The district court declined to apply the doctrine of successor liability and count the three years Plaintiff had worked for Byrd Trucking toward Plaintiff's FMLA eligibility, concluding that because there was no "continuity of ownership or control" between Byrd Trucking and Defendant, no predecessor-successor relationship could exist. (J.A. at 304.) The district court reasoned there could be no "continuity of ownership or control" without a merger or transfer of assets between Defendant and Byrd Trucking. Plaintiff now appeals the district court's holding, contending that a merger or transfer of assets is not a precondition to successor liability under the FMLA.

## II.
## DISCUSSION

### A.    Subject-Matter Jurisdiction

Before reaching the merits of Plaintiff's appeal, we must address Defendant's contention that the district court lacked subject-matter jurisdiction over Plaintiff's claims. Defendant argues that the district court lacked subject-matter jurisdiction to hear Plaintiff's FMLA claims because Defendant is not an "employer" within the meaning of the FMLA, or alternatively, because Plaintiff is not an "eligible employee" within the meaning of the FMLA. This Court's 1998 decision in *Douglas v. E.G. Baldwin & Associates*, 150 F.3d 604, 607-08 (6th Cir. 1998), supports Defendant's position. In *Douglas*, this Court held that "[f]or a federal court to exercise subject matter jurisdiction in a statutory scheme such as the FMLA, the defendant-company must meet the statutory definition of 'employer.'" *Id. Douglas*' reasoning applies with equal force to whether an employee meets the FMLA's definition of "eligible employee." Nonetheless, because intervening Supreme Court precedent has made clear that *Douglas* was incorrectly decided, we decline to follow *Douglas* and instead hold that the district court had subject-matter jurisdiction over Plaintiff's claims. *See Arbaugh v. Y & H Corp.*, — U.S. — , 126 S. Ct. 1235 (Feb. 22, 2006) (holding that whether a defendant is an "employer" within the meaning of Title VII does not bear on subject-matter jurisdiction); *see also Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 519 (6th Cir. 2006) (holding that two recent Supreme Court decisions overrule panel precedent confusing so-called "statutory standing" with subject-matter jurisdiction).

### 1.    Section 1331 of Title 28 of the United States Code grants the district court subject-matter jurisdiction over Plaintiff's FMLA claims.

Section 1331 of Title 28 of the United States Code grants federal district courts subject-matter jurisdiction over all claims "arising under" federal law. 28 U.S.C. § 1331. *Arbaugh*, — U.S. —, 126 S. Ct. at 1239. A claim arises under federal law when "the plaintiff's statement of his own cause of action shows that it is based upon [federal] laws or [the federal] Constitution." *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *see also Bell v. Hood*, 327 U.S. 678, 681 (1946) ("Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent 'the party who brings a suit is master to decide what law he will rely upon, and . . . does determine whether he will bring a 'suit arising under' the . . . (Constitution or laws) of the United States by his declaration or bill.") There are only two exceptions to this "well-pleaded complaint rule." A plaintiff's claim that federal law entitles him to relief is insufficient to create subject-matter jurisdiction where (1) "the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'" or (2) the "claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

In this case, the district court clearly had subject-matter jurisdiction under § 1331. First, Plaintiff asserts claims under federal law, the FMLA, codified at 29 U.S.C. §§ 2601-54. Second, as should be clear from the discussion of the merits, *infra*, Plaintiff's FMLA claims are neither frivolous and insubstantial, nor made solely for the purpose of obtaining subject-matter jurisdiction. Therefore, Plaintiff's claims arise under federal law, and § 1331 granted the district court subject-matter jurisdiction.

> 2.    **The *Douglas* panel's conclusion that § 1331 does not grant district courts subject-matter jurisdiction over a FMLA claim unless the defendant-employee meets the FMLA's statutory definition of "employer" conflates subject-matter jurisdiction with failure to state a claim.**

In *Douglas*, a panel of this Court incorrectly held that a district court lacks subject-matter jurisdiction over a plaintiff's FMLA claims where the defendant is not an "employer" within the meaning of the FMLA. 150 F.3d at 607-08. The *Douglas* panel reasoned that where the defendant is not an "employer" within the meaning of the FMLA, the plaintiff's claim does not arise under federal law within the meaning of 28 U.S.C. § 1331. This line of reasoning, however, erroneously conflates subject-matter jurisdiction with failure to state a claim upon which relief may be granted. *See Arbaugh*, — U.S. —, 126 S. Ct. at 1242-43. As the Supreme Court explained in *Bell v. Hood*, 327 U.S. at 685, a plaintiff need not be entitled to relief under federal law in order for a district court to exercise subject-matter jurisdiction. So long as "the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another . . . .[a] district court has jurisdiction." *Id.* Where, as in the instant case, a plaintiff asserts that the FMLA entitles him to relief, the district court must exercise subject-matter jurisdiction over the plaintiff's claim in order to determine whether the plaintiff's interpretation of the FMLA is meritorious. To hold otherwise would render the distinction between subject-matter jurisdiction and failure to state a claim meaningless.

> 3.    **Intervening Supreme Court decisions have rendered *Douglas* non-binding.**

Although normally this Court is bound by prior panel precedent regardless of its correctness, several recent Supreme Court cases have overruled the holding in *Douglas*. Most directly on point is *Arbaugh v. Y & H Corp.*, — U.S. — , 126 S. Ct. at 1242-45, in which the Supreme Court held that Title VII's employee-numerosity requirement is not jurisdictional in nature. Title VII, like the FMLA, imposes liability on employers who violate its provisions. 29 U.S.C. § 2615 (FMLA); 42 U.S.C. § 2000e-2(a)(1) (Title VII). Additionally, like the FMLA, Title VII defines "employer" to include only those persons who employ more than a threshold number of employees. 29 U.S.C. § 2611(4) (FMLA); 42 U.S.C. § 2000e (Title VII). No employee is entitled to relief under either the FMLA or Title VII unless he or she can show that the defendant-employer employs the requisite number of employees, and thus that the defendant-employer falls within the statutory definition of "employer." 29 U.S.C. § 2611 (FMLA); 42 U.S.C. § 2000e (Title VII). In *Arbaugh*, the Supreme Court reasoned that because Title VII's employee-numerosity requirement appeared in the "definitions" section of Title VII and "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," it was not jurisdictional. — U.S. —, 126 S. Ct. at 1242-45. Inasmuch as the FMLA's definitions of "employer" and "eligible employee" also appear in the FMLA's "definition" section and do "not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," *Arbaugh* compels the conclusion that they are not jurisdictional in nature. *See id.* at 1245 (internal citation omitted). Even if this were insufficient to demonstrate that *Douglas* no longer binds the courts of this Circuit, *Arbaugh* also expressly overrules this Court's decision in *Armbruster v. Quinn*, 711 F.2d 1332, 1135 (6th Cir. 1983), upon which the *Douglas* panel based its holding, 150 F.3d at 607-08. *Arbaugh*, — U.S. —, 126 S. Ct. at 1242.

In addition to *Arbaugh*, the Supreme Court has issued two other decisions in the past three years instructing courts of appeals to properly distinguish between subject-matter jurisdiction and other limits on a court's authority. *See Eberhart v. United States*, — U.S. —, 126 S. Ct. 403, 405 (2005) (per curiam) (holding that the Federal Rules of Criminal Procedure do not limit subject-matter jurisdiction); *Kontrick v. Ryan*, 540 U.S. 443, 453-54 (2004) (holding that the Federal Bankruptcy Rules do not limit subject-matter jurisdiction). A panel of this Court recently held that these cases overrule prior panel precedent construing the eligibility sections of federal statutes as jurisdictional in nature. *See Primax*, 433 F.3d at 519 (holding that whether a plaintiff is a participant within the meaning of ERISA is not relevant to a district court's subject-matter jurisdiction). We follow the reasoning in *Primax* and hold that the FMLA's definitions of "employer" and "eligible employee" are not jurisdictional in nature. Accordingly, we now reach the merits of Plaintiff's arguments on appeal.

## B.       Standard of Review

We review a district court's decision granting summary judgment *de novo*. *Nat'l Solid Wastes Mgm't Ass'n v. Daviess County*, 434 F.3d 898, 902 (6th Cir. 2006). Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to a judgment in his or her favor as a matter of law. Fed. R. Civ. P. 56(c).

## C.       Successor Liability

This case presents an issue of first impression in this Circuit, one for which there is little direct guidance in other circuits. No federal circuit has yet addressed whether a merger or transfer of assets is a precondition to successor liability under the FMLA, and the closest case on point is the Eleventh Circuit's decision in *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1236-38 (11th Cir. 2005), holding that a merger or transfer of assets is a precondition to successor liability under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301-4333. Although the Eleventh Circuit applied a test for successor liability very similar to the test set forth in FMLA regulations, we decline to hold, as the Eleventh Circuit did, that a merger or transfer of assets is always a precondition to successor liability. We find persuasive the fact that both the FMLA and its implementing regulations evidence a congressional intent to adopt the doctrine of successor liability developed in federal labor law cases. The FMLA expressly defines "employer" to include "successors in interest," 29 U.S.C. § 2611(4)(A)(ii)(II), and its implementing regulations adopt the successor in interest test from Title VII case law, 29 C.F.R. § 825.107. The successor liability test set forth in Title VII case law originates in federal labor law. Inasmuch as federal labor cases do not require a merger or transfer of assets as a precondition to the imposition of successor liability, we decline to impose such a requirement.

### 1.       The FMLA and its implementing regulations create the relevant legal framework.

An employee is only eligible for FMLA leave after working for a covered employer for at least twelve months. 29 U.S.C. § 2611(2)(A)(I). Work for a covered employer includes work performed for both a covered employer from whom leave is requested and any previous employer to whom the current covered employer is a "successor in interest." 29 U.S.C. § 2611(4)(ii)(II). The regulations implementing the FMLA instruct courts to consider the factors used under Title VII of the Civil Rights Act and the Vietnam Era Veterans' Adjustment Act in determining whether a covered employer is a "successor in interest" to a previous employer. 29 C.F.R. § 825.107. The regulations, however, clarify that, in contrast to Title VII, notice of an employees' FMLA claim should not be considered. *Id.* The regulations further instruct courts to consider the following enumerated factors:

(1)      Substantial continuity of the same business operations;

(2)      Use of the same plant;

(3)      Continuity of work force;

(4)      Similarity of jobs and working conditions;

(5)      Similarity of supervisory personnel;

(6)      Similarity in machinery, equipment, and production methods;

(7)      Similarity of products and services; and

(8)      The ability of the predecessor to provide relief.

*Id.* "[W]hether or not a 'successor in interest' exists is not determined by the application of any single criterion, but rather the entire circumstances are to be viewed in their totality." *Id.*

**2.      The transfer of assets or a merger is not always a precondition to the application of the "successor in interest test."**

Defendant does not dispute the applicability of § 825.107's multi-factor approach to the issue of successor liability; rather, Defendant argues that a merger or transfer of assets is a precondition to the application of the multi-factor approach. Although Defendant's argument that a merger or transfer of assets is a precondition to the imposition of successor liability has some initial appeal, the argument does not withstand a deeper analysis. The argument's initial appeal stems from the common understanding of successor liability as a corporate law concept, applied when a corporation reorganizes to ensure that creditors are not defrauded. Successor liability under the FMLA, however, derives from labor law, not corporate law. *See infra.* Labor cases, whose holdings were later applied to Title VII cases, apply an equitable, policy driven approach to successor liability that has very little connection to the concept of successor liability in corporate law. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 184-85 (1973); *NLRB v. Burns Int'l Security Servs., Inc.*, 406 U.S. 272, 279-87 (1972); *John Wiley & Sons v. Livingston*, 376 U.S. 543, 549 (1964). Successor liability is imposed in labor law if the court determines that it would be equitable to impose such liability considering 1) the defendant's interest, 2) the plaintiff's interest, and 3) federal policy embodied in the relevant statutes in light of the particular facts of the case and the particular duty at issue. *See EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1089-91 (6th Cir. 1974) (adopting labor approach to successor liability in a Title VII case).

**a.      The principles of federal successor liability applicable to the FMLA originate in federal labor law.**

The Supreme Court first addressed labor law successor liability in *John Wiley & Sons v. Livingston*, 376 U.S. at 543. In *Wiley*, the Supreme Court held that the defendant-corporation, formed as the result of a merger, was bound to arbitrate with the plaintiff-union under the arbitration clause of the pre-merger corporation's collective bargaining agreement. *Id.* at 548. The Court reasoned that the federally imposed duty to arbitrate labor disputes could not be effectuated if every change in corporate structure relieved employers of the duty to arbitrate. *Id.* at 549. Concluding that a collective bargaining agreement was not truly a consensual contract to which the ordinary principles of contract law applied, the Court balanced the competing interests to determine if successor liability furthered federal policy in an equitable manner. *Id.* In the balance, the Court weighed the need of the employers to reorganize against the need of the employees to be protected in the process of reorganization, a process in which employees have no power. *Id.* The Court

concluded that while the duty to arbitrate does not survive every corporate change, a "successor" corporation will be bound by its predecessor's duty to arbitrate where "there is a substantial continuity in the identity of the business enterprise." *Id.* at 551. In the context of a merger, substantial continuity was evidenced by the "wholesale transfer of . . . employees." *Id.*

The Supreme Court refined *Wiley*'s doctrine of successor liability in *NLRB v. Burns International Security*, 406 U.S. at 281-82, clarifying that a defendant-company could be a successor for one purpose but not for another purpose. In *Burns*, a labor union purporting to represent security guards at a Lockheed Martin plant sued the company providing security at the Lockheed plant for failing to recognize the union's authority and failing to abide by a collective bargaining agreement. *Id.* at 275-76. In its defense, the security company pointed out that it had never signed the collective bargaining agreement in issue. *Id.* Instead, Lockheed's former security management company had signed the agreement. *Id.* The defendant-company argued that because it had not signed the agreement that it could not be bound by the agreement. *Id.*

The Supreme Court held that while the defendant had a duty to negotiate with the union, it was not bound by the terms of the old collective bargaining agreement. *Id.* at 281-82. The defendant-company had a duty to negotiate with the union because it hired all of the old company's employees, and the union was the chosen representative of those employees. *Id.* at 279-80. A change in management alone could not deprive the union of its representative role because the union's authority was derived from the identity of the employees and not the identity of the management. *See id.* at 279-80, 287. In contrast, the defendant-company was not bound by the terms of the old collective bargaining agreement because the defendant had never signed the agreement. *Id.* at 282-91. The Supreme Court interpreted labor law to embody a federal policy in favor of free bargaining. *Id.* at 282-87. While that policy supported imposing a duty to negotiate on employers, it did not support imposing contract terms on employers. *Id.* The Court also noted that imposing the terms of one company's collective bargaining agreement on another company would inhibit the transfer of capital by making reorganization more difficult, and that a union may also make concessions to one employer that it would not be willing to make to another employer. *Id.* at 287-88. These policies militated against imposing a collective bargaining agreement on a new employer simply because the new employer engaged in the same work at the same place and employed the same individuals, and limited such impositions to mergers, stock acquisitions and other like reorganizations. *Id.*

The Supreme Court next addressed successor liability in *Golden State Bottling Co. v. NLRB*, 414 U.S. at 168. In *Golden State*, the Supreme Court extended successor liability from negotiations and the imposition of collective bargaining agreements to liability for unfair labor practices. *Id.* at 172. The defendant-corporation in *Golden State* was the bona fide purchaser of a business, which had committed an unfair labor practice by discharging an employee. *Id.* at 171-72. After balancing the equities, the Supreme Court found that the defendant was liable for reinstating the discharged employee with backpay. *Id.* at 181, 184-85. The Court based its decision on its conclusion that federal labor law would best be implemented by holding the defendant liable and that such liability was equitable. *See id.* The Court reasoned that the purchaser-company receives a continuing benefit from its predecessor's illegal actions, and thus it is appropriate for the company to disgorge the illegal benefit. *Id.* at 184. The Court further reasoned that because the purchasing company had notice of the illegal practice, the ensuing liability could be reflected in the business' purchase price. *Id.* at 185.

One year later, the Supreme Court again visited successor liability in the negotiation and collective bargaining agreement context. *See Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Employees Int'l Union*, 417 U.S. 249 (1974). In *Howard Johnson*, the Supreme Court declined to impose a duty to arbitrate on a defendant-corporation that purchased the assets of a business. *Id.* at 263. The Court distinguished *Wiley* on at least two grounds. First, *Wiley* involved

a merger, and under the state law relevant in *Wiley*, a corporation's obligations survived a merger. *Id.* at 257. Thus, the Court reasoned that the defendant in *Wiley* had a reasonable expectation of the duty to negotiate, which did not exist in *Howard Johnson*. *Id.* Second, the defendant-corporation in *Howard Johnson* only employed nine of the fifty-three former employees and thus there was no "substantial continuity of identity in the business enterprise" requiring the defendant-corporation to negotiate with the union. *Id.* at 259-60.

### b.       Courts extended successor liability from labor law to Title VII and the Vietnam Veteran's Readjustment Assistance Act.

In *MacMillan*, 503 F.2d at 1086, this Court extended successor liability from the labor law context to Title VII. Interpreting the Supreme Court's decisions in *Wiley*, *Burns*, and *Golden State Bottling Company*, this Court concluded that the appropriateness of successor liability depends on whether the imposition of such liability would be equitable. *Id.* at 1089-91. The Court further concluded that whether successor liability is equitable in a particular case requires courts to balance 1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) the goals of federal policy, in light of the particular facts of a case and the particular legal obligation at issue. *Id.* at 1091. The Court emphasized that "there is, and can be, no single definition of 'successor' which is applicable in every legal context." *Id.* Successor liability questions must be answered on a case by case basis, and "a new employer . . . may be a successor for some purposes and not for others." *Id.*

The *MacMillan* panel also laid the framework for a multi-factor approach that would subsequently be adopted in several circuits and codified in the FMLA's regulations. 29 C.F.R. § 825.107; *Smegel v. Gateway Foods of Minneapolis, Inc.* 819 F.2d 191, 194 (8th Cir. 1987); *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983); *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 224-225 (10th Cir. 1982). The panel gathered labor case law and distilled from it the following factors, which it held were relevant to the imposition of successorship liability: (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and methods of production; and (9) whether [the defendant] produces the same product. *MacMillan*, 503 F.2d at 1094. This so-called multi-factor approach has since been applied to cases under the Vietnam Veteran's Readjustment Assistance Act, *see Leib v. Georgia-Pac. Corp.*, 925 F.2d 240, 245-46 (8th Cir. 1991), and codified in the FMLA's implementing regulations, 29 C.F.R. § 825.107.

The nine-factors listed in *MacMillan* and subsequently adopted in regulation 29 C.F.R. § 825.107, are not in themselves the test for successor liability. Instead, the nine factors are simply factors courts have considered when applying the three prong balancing approach, considering the defendant's interests, the plaintiff's interests, and federal policy. As will be explained in more detail below, all nine factors will not be applicable to each case. Whether a particular factor is relevant depends on the legal obligation at issue in the case. The ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy.

### c.       The merger or transfer of assets is not always a precondition to successor liability under the FMLA.

The regulations implementing the FMLA adopt the definition of "successor in interest" set forth in *MacMillan*, thereby adopting the labor law concept of successor liability. Because the

merger or transfer of assets is not a precondition to successor liability in the labor law (or Title VII) context, it is not a precondition for liability in the FMLA context. Instead, the labor law concept of successor liability requires courts to balance the equities of imposing a particular legal obligation in a particular situation, considering 1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) federal policy embodied in the relevant federal statutes.

In labor case law, it is the legal obligation at issue that determines which factors listed in 29 C.F.R. § 825.107 are most relevant to the imposition of successor liability. Courts have generally considered three distinct legal obligations: (1) the duty to negotiate with the union; (2) the duty to adhere to a collective bargaining agreement; and (3) liability to an employee for illegal discrimination or an unfair trade practice. When imposing the duty to arbitrate the single most important factor is whether the new employer employs the same employees. *See Howard Johnson*, 417 U.S. at 260; *Burns*, 406 U.S. at 278-80; *Wiley*, 376 U.S. at 551. This is because the employer's duty to negotiate arises out of the employees' decision to allow the union to represent them. *See Burns*, 406 U.S. at 278-80. The change in employer does not alter the employees' representation decision, and thus duty to negotiate continues. *See id.* When imposing the duty to adhere to a collective bargaining agreement, courts look to whether the identity of management/ownership is in fact the same, despite structural reorganization. *Compare Wiley,* 376 U.S. at 549 (expressing concern with corporate reorganizations invalidating collective bargaining agreements and holding a merger did not necessarily relieve a company of obligations under a collective bargaining agreement) *with Howard Johnson*, 417 U.S. at 261 (holding that a sale of assets was insufficient to bind a purchaser to a collective bargaining agreement and noting that there was no suggestion of "a paper transaction without meaningful impact on the ownership or operation of the enterprise.") This is because the duty to adhere to the collective bargaining agreement arises out of the owner's agreement to adhere to the bargain. *Burns*, 406 U.S. at 286-88; *see also Howard Johnson*, 417 U.S. at 261-62. If the structure changes, but not the owner, then the source of the duty – the owner's signature– remains unaltered. Finally, when imposing liability for a predecessor's illegal conduct, courts look to the transfer of assets and substantial continuity of the business enterprise. *See, e.g, Golden State*, 414 U.S. at 184-85. This is because the value of the assets, and of the business generally, is presumed to have increased from the illegal conduct, thus benefitting any successor. *Id.*

In this case, Plaintiff asks the Court to hold that Defendant is a successor in interest to Byrd Trucking for the purpose of imposing FMLA duty to grant sick leave to seriously ill employees. The FMLA's duty to provide sick leave arises through statute and an employee's tenure. Because the source of the duty seemingly has no relationship to a company's physical assets, we see no reason to hold that a merger or transfer of assets is a precondition to the imposition of the duty. Therefore, we decline to hold that a merger or asset transfer is always a precondition to the imposition of successor liability under the FMLA.

Defendant relies on inapposite and poorly reasoned case law for the proposition that a merger or transfer of assets is a precondition to successor liability. Specifically, Defendant relies on *Terco, Inc. v. Fed. Coal Mine Safety and Health Review Comm'n*, 839 F.2d 236, 239 (6th Cir. 1987), *Korlin v. Chartwell Health Care, Inc.*, 128 F. Supp. 2d 609, 614 (E.D. Mo. 2001), and *Coffman,* 411 F.3d at 1231*,* to support its theory that a merger or transfer of assets is a precondition to the imposition of successor liability. *Terco* and *Korlin* do not support Defendant's position, while *Coffman* is poorly reasoned. In *Terco*, this Court imposed successor liability for labor law violations. 839 F.2d at 239. In justifying its imposition of liability, this Court expressly rejected the position that a merger or transfer of assets was a precondition to successor liability stating, "Although a sale or the lack thereof is certainly one of the factors to which a court can look, it is not in and of itself determinative." *Id.* Thus, *Terco* does not stand for the proposition that a sale or transfer of assets is a precondition to the imposition of successor liability.

In *Korlin*, 128 F. Supp. 2d at 614, the court did hold that a merger or transfer of assets was a precondition for liability. *Korlin*, however, involved a different factual situation – the imposition of successor liability for a predecessor's past discriminatory conduct. *Id.* The *Korlin* court relied on the Supreme Court's holding in *Golden Bottle*, 128 F. Supp. 2d at 614, holding that the imposition of successor liability was equitable, in part, because it could be reflected in the purchase price. 414 U.S. at 185. Thus, the *Korlin* court reasoned that a merger or transfer of assets was necessary to the imposition of successor liability; if the defendant-company did not purchase the predecessor, the cost of liability could not have been reflected in the any purchase price and successor liability would not be equitable. 128 F. Supp. 2d at 614. While the *Korlin* court's reasoning may be correct as applied to successor liability for past discrimination or unfair labor practice, it does not apply to imposition of liability for other duties. The duty in issue here – the duty to grant reasonable medical leave – is not imposed because it can be reflected in a company's purchase price. *See infra*. Thus, it does not follow that a merger or transfer of assets is a precondition to successor liability in this case.

In contrast, the court in *Coffman,* 411 F.3d at 1231*,* found that a merger or transfer of assets was a precondition to successor liability for a company's failure to hire. *Coffman*, however, is not binding on this Court. Inasmuch as the only basis for the *Coffman* court's holding is a Third Circuit case decided prior to the relevant Supreme Court precedent, this Court will not follow *Coffman*. *See id.* at 1237-38 (citing *Kicinski v. Constable Hook Shipyard*, 168 F.2d 404, 408-09 (3d Cir. 1948)).

Nonetheless, we similarly decline to take Plaintiff's argument to its furthest reaches. Plaintiff argues that this Court cannot require a merger or transfer of assets because no such requirement is contained in the regulation, 29 C.F.R. § 825.107, setting forth the test for successor liability. However, § 825.107 also expressly instructs courts to use factors from Title VII case law. Title VII cases do consider the existence of a merger or transfer of assets, and we believe that in some cases consideration of the existence of a merger or transfer of assets is appropriate. *See, e.g., EEOC v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988) (discussing the manner of the purchase in the context of whether "substantial continuity" existed).

### 3.        Defendant is a successor in interest to Byrd Trucking for the purpose of providing Plaintiff with FMLA leave.

A balance of the equities in light of federal policy embodied in the FMLA weighs in favor of holding that Defendant is a successor in interest to Byrd Trucking for the purpose of providing Plaintiff with sick leave under the FMLA. A stated purpose of the FMLA is "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). The FMLA's entitlement to reasonable medical leave was intended to apply to all regular full-time employees. It requires an employee to be employed for twelve months and to have worked to 1250 hours in the those twelve months only in order to exclude temporary and seasonal workers from its coverage. H.R. Rep. No. 103-8(I), at 35 (1993); S.R. No. 103-3, at 25 (1993). As Plaintiff's previous employment on the Denver-Philadelphia route demonstrates, Plaintiff is not the type of employee the FMLA intended to exclude from coverage. Plaintiff's employment has been continuous. Plaintiff has carried U.S. mail on the exact same route, with the exact same relay stops, for the past three years. In reality, it as if Plaintiff works for the USPS and not for one particular trucking company. Only the management, not the job, has changed.

Equally important, however, declining to apply successor liability to companies competing for government contracts circumvents implementation of the FMLA. The USPS accepts new bids on contracts every two years. If a new company is not required to grant truck drivers FMLA leave, regardless of how long the driver has been on the route, the new companies will have lower FMLA costs and correspondingly be at an advantage in the bidding process. Conceivably, a new company

could be awarded the contract every time, preventing truck drivers from ever qualifying for FMLA leave (or qualifying on a bi-yearly basis).

Finally, applying successor liability between competitors for a contract job is not unprecedented. In *Burns*, the Supreme Court held that a defendant-company was obligated to honor a union's representation of a group of its employees, despite the fact that the union became authorized to represent the employees when the employees were working for a former employer. The Supreme Court reasoned that the union's authority arose, not out of the predecessor company's actions but out of labor law and the employees' actions. In the instant case, as in *Burns*, the duty to provide FMLA leave does not arise out of the predecessor company's, Byrd Trucking's, actions but has an independent source in the FMLA and the employees' decision to maintain continuous employment. Therefore, the duty should survive a change in management.

## D.     FMLA's Worksite Requirement

Our conclusion that Defendant is a successor in interest to Byrd Trucking within the meaning of the FMLA does not end our analysis in this case. Defendant further contends that, even if it is a successor in interest to Byrd Trucking, that Plaintiff is not an "eligible employee" within the meaning of the FMLA because Plaintiff is employed at a "worksite" with less than 50 employees. According to Defendant, Plaintiff's worksite is the truck stop in Mt. Sterling, Kentucky, where Plaintiff picks up his truck to drive to Philadelphia. Plaintiff contests Defendant's characterization of the Mt. Sterling truck stop as a worksite, and instead argues that Des Moines, Iowa, where Defendant's dispatchers are located, is his worksite. Because we find that Des Moines, Iowa, and not Mt. Sterling, Kentucky, is Plaintiff's worksite, we reject Defendant's position that Plaintiff is not an "eligible employee" within the meaning of the FMLA.

### 1.      The FMLA and its implementing regulations create the relevant legal framework.

The FMLA excludes from its coverage employees who are employed at worksites where the "total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). Department of Labor ("DOL") regulation 29 C.F.R. § 825.111 defines the term worksite as used in the FMLA. Subsection (2) of the § 825.111 specifically addresses workers with no fixed worksite, including truck drivers. It states:

> For employees with no fixed worksite, e.g., construction workers, transportation workers (e.g., truck drivers, seamen, pilots), salespersons, etc., the "worksite" is the site to which they are assigned as their home base, from which their work is assigned, or to which they report. . . . For transportation employees, their worksite is the terminal to which they are assigned, report for work, depart, and return after completion of a work assignment. For example, an airline pilot may work for an airline with headquarters in New York, but the pilot regularly reports for duty and originates or begins flights from the company's facilities located in an airport in Chicago and returns to Chicago at the completion of one or more flights to go off duty. The pilot's worksite is the facility in Chicago. An employee's personal residence is not a worksite in the case of employees such as salesperson who travel a sales territory and who generally leave to work and return from work to their personal residence, or employees who work at home, as under the new concept of flexiplace. Rather, their worksite is the office to which the [sic] report and from which assignment are made.

29 C.F.R. § 825.111(a) (2).

There is no case law interpreting this regulation as applied to truck drivers. However, the legislative history of the FMLA and published statements of the DOL make clear that both the statutory term "worksite" as well the definition of "worksite" contained in § 825.111 are based on the term "single site of employment" in the WARN Act. 60 F.R. at 2187; *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1151-52 (10th Cir. 2004). In *Teamsters Local Union 413, et al. v. Driver's, Inc.*, 101 F.3d 1107, 1108 (6th Cir. 1996), this Court interpreted the term "single site of employment" as applied to truck drivers. In *Driver's*, this Court held that eleven trucking terminals located in distinct geographical locations more than 75 miles apart did not constitute a "single site of employment." *Id.* at 1111. In reaching this conclusion, the Court assumed that each terminal was a site of employment. *Id.* at 1108-09. In *Driver's*, however, the relevant worksites were not contested by the parties. Instead, the "sole issue on appeal [was] whether [the terminals] operated by defendant constitute[d] a 'single site,'" or whether it was improper to aggregate the terminals. *Id.* at 1108. Additionally, the worksites at issue in *Driver's* were owned and operated by the defendant. *Id.*

## 2.    Des Moines, Iowa is Plaintiff's worksite.

We find that Plaintiff's worksite is located in Des Moines because Plaintiff received his work assignments from Des Moines and reported to Des Moines. As noted above, DOL regulations define "worksite" as the "site to which [traveling employees] are assigned as their home base, from which their work is assigned, or to which they report." 29 C.F.R. § 825.111(2). Thus, the majority of the factors that the DOL has designed as relevant to the worksite inquiry weigh in favor of finding that Des Moines is Plaintiff's worksite.

Additionally, while it is true that a more specific provision of § 825.111(2) states that a transportation employee's worksite is "the terminal to which they are assigned to report for work, depart, and return after completion of a work assignment," there is no clear "terminal" in this situation that would divest Des Moines of its worksite status. *See* 29 C.F.R. § 825.111(2). As the example following the "terminal" provision indicates, a "terminal" is only a worksite if it is owned or controlled by the defendant-company. The example in § 825.111 reads as follows:

> For example, an airline pilot may work for an airline with headquarters in New York, but the pilot regularly reports for duty and originates or begins flights *from the company's facilities* located in an airport in Chicago and returns to Chicago at the completion of one or more flights to go off duty. The pilot's worksite is the *facility* in Chicago.

29 C.F.R. § 825.111 (emphasis added). The "terminal" from which the pilot leaves is termed a "company[] facilit[y]" indicating the defendant-company must actually own or exercise control over the terminal for it to be a proper worksite. *See also* 29 C.F.R. 825.111(2) ("For example, if a construction company headquartered in New Jersey opened a construction site in Ohio, *and set up a mobile trailer on the construction site as the company's on-site office*, the construction site would be the worksite for any employee hired locally . . . .") In the instant case, Plaintiff departs and returns to a public truck stop, a glorified gas station, over which Defendant has no authority or control. Consequently, we cannot find that Mt. Sterling is Plaintiff's worksite within the meaning of the FMLA.

Moreover, designating Des Moines as Plaintiff's worksite furthers the purpose of the FMLA's worksite exclusion. As the Tenth Circuit explained in *Harbert*, 391 F.3d at 1149, the purpose of the worksite exclusion is to relieve employers, "even potentially large employers," of "finding temporary replacements for employees who work at geographically scattered locations." Companies with less than fifty employees at a particular worksite may be unduly strained in an attempt to grant employees with FMLA leave. *See id.* In the instant case, the record clearly

indicates that trucking schedules and assignments are coordinated in Des Moines. Consequently, were an employee to call in sick or request FMLA leave, his replacement would necessarily be determined by the dispatchers in Des Moines. There is no evidence in the record that Plaintiff's replacement would need to be from Mt. Sterling. In fact, the only evidence supports a contrary conclusion. Plaintiff's route includes numerous stops, in such various locations as Illinois and Pennsylvania, and there is no reason to believe that a driver living in one of these locations could not pick up Plaintiff's truck in one of numerous locations.

Finally, the worksite provision of the FMLA is an exclusionary provision in a remedial statute. Following traditional canons of statutory interpretation, remedial statutes should be construed broadly to extend coverage and their exclusions or exceptions should be construed narrowly. *See Bridewell v. Cincinnati Reds*, 155 F.3d 828, 831 (6th Cir. 1998). Designating Des Moines as Plaintiff's worksite would extend coverage of the FMLA not just to Plaintiff but to all truck drivers receiving assignment from Des Moines dispatchers. Such a designation would be in keeping with the FMLA's remedial purpose and traditional canons of statutory interpretation.

## III.
## CONCLUSION

For the foregoing reasons, we hold that Defendant is a successor in interest to Byrd Trucking within the meaning of the FMLA and that Plaintiff's worksite is in Des Moines, Iowa. Accordingly, we **REVERSE** the order of the district court granting summary judgment in favor of Defendant.