CLAY, Circuit Judge,
dissenting.
“[T]he appropriateness of successor liability depends on whether the imposition of such liability would be equitable.” Cobb v. Contract Transp., Inc., 452 F.3d 543, 553-54 (6th Cir.2006). The FMLA factors relevant to the successor liability inquiry weigh in Plaintiffs favor and, balancing the equities involved, successor liability should be imposed in this case. Because the pertinent FMLA regulations compel the imposition of successor liability and because I disagree with the majority’s con- *526 elusion that Plaintiffs claim is barred by-laches, I respectfully dissent.
In order to assert her right to FMLA leave, Plaintiff filed suit against Wireless Retail, her employer at the time she was fired. Wireless Retail subsequently sold some of its assets to RadioShack, but continued to defend against Plaintiffs lawsuit and even suggested that Wireless Retail’s insurance policy would cover Plaintiffs claims. After stringing Plaintiff along through the litigation process, on January 30, 2006, Wireless Retail’s counsel informed Plaintiff — following the denial of Wireless Retail’s motion for summary judgment — that Wireless Retail had ceased conducting business as an ongoing entity and would no longer be available as a party defendant. As explained below, the applicable FMLA regulations provide the appropriate vehicle to enable Plaintiff to prevail on the issue of successor liability.
The proper focus of this case has been entirely misplaced by the majority. At the heart of the case lies a potential FMLA violation — yet the majority has inexplicably transformed the case into one about laches while declining to consider the merits of Plaintiffs FMLA claim. Specifically, the majority concludes that the record shows that Plaintiff and her counsel were aware of Wireless Retail’s asset sale prior to January 30, 2006 and therefore argues that the doctrine of laches precludes further consideration of Plaintiffs claim.
As this Court has previously stated, “a party’s notice or lack of notice that its rights are being infringed is particularly relevant to determining whether that party lacked diligence in protecting its rights.” Ford Motor Co. v. Catalanotte, 342 F.3d 543, 550 (6th Cir.2003). “[A]ny delay attributable to [a] plaintiff must be measured from a time at which the plaintiff knew or should have known that [the] infringement [of his or her rights] ripened into a provable claim.” Kellogg Co. v. Exxon Corp., 209 F.3d 562, 569-70 (6th Cir.2000).
The majority concludes that some knowledge on the part of Plaintiff regarding the Asset Purchase Agreement and Wireless Retail’s sale of assets is enough to impute to Plaintiff knowledge of the successor liability issue. In doing so, however, the majority discounts the fact that Wireless Retail remained at least nominally in business following the transaction with RadioShack and even engaged in the discovery process with Plaintiff. Moreover, in March 2005, Wireless Retail answered interrogatories that indicated Plaintiffs claim would be covered by the terms of Wireless Retail’s insurance policy. It was not until January 30, 2006, when Wireless Retail’s counsel informed Plaintiff that Wireless Retail had ceased doing business as an ongoing entity, that Plaintiff had notice of a possible claim against RadioShack. On February 10, 2006, less than two weeks later, Plaintiff filed a motion for leave to amend her complaint and add RadioShack as a party defendant.
The majority’s injection of the laches defense into the case makes no sense under the factual circumstances apparent here. The majority seeks to impose on Plaintiff a burden to investigate in the absence of any apparent need to do so and despite the fact that Wireless Retail continued to string Plaintiff along a primrose path, failing to indicate along the way that Plaintiff might no longer have a source of recovery. It is commonly understood that laches is recognized as an extraordinary measure that should only be invoked on rare occasions, see Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 366 (6th Cir.1985), and the laches question is “one of fairness in light of all the facts.” Lintz v. Skipski, 25 F.3d 304, 306 (6th Cir.1994). *527 While it might have been prudent of Plaintiffs counsel to have investigated earlier, that should not prove fatal to Plaintiffs claim in light of the fact that during most of the pendency of the case, the named defendant did not dispute its potential liability on the basis that Plaintiff had sued the wrong party or that any damage award against the named defendant might be unrecoverable or uncollectible.
Moreover, laches is an equitable defense that can only be raised by a defendant with clean hands. United States v. Weintraub, 613 F.2d 612, 619 (6th Cir.1979). In this case, Wireless Retail continued to defend the lawsuit and even informed Plaintiff that if Plaintiff prevailed her claim would be covered under Wireless Retail’s insurance plan. Regardless of whether Wireless Retail had a duty to advise Plaintiff regarding insurance coverage, the fact remains that Wireless Retail provided Plaintiff with this insurance coverage information, yet failed to subsequently inform her that no such coverage existed. Instead, Wireless Retail continued to defend the lawsuit — that is, until defense counsel dropped the bombshell on Plaintiff that Wireless Retail had gone out of business. In view of this sequence of events, Wireless Retail’s conduct certainly has the smell of impropriety and gives the appearance of unclean hands on the part of Wireless Retail as well as RadioShack — which will benefit tremendously from any possible chicanery that may have been perpetrated by Wireless Retail. Accordingly, laches should not bar Plaintiffs claim.
Because it concluded that Plaintiffs FMLA claim against RadioShack was barred by laches, the majority declined to discuss the merits of Plaintiffs claim. As a preliminary matter, we should first consider the timeliness of Plaintiffs complaint. RadioShack contends that Plaintiffs claims are barred by the applicable statute of limitations.[1] Specifically, RadioShack argues that Plaintiffs FMLA and ELCRA claims expired on November 4, 2005— three years after Plaintiffs employment was terminated. Since Plaintiff did not file her amended complaint[2] until April 11, 2006, RadioShack asserts that Plaintiffs complaint must “relate back” pursuant to Federal Rule of Civil Procedure 15(c) in order to be considered timely.
Plaintiffs amended complaint, however, should be deemed timely. Plaintiff timely filed her complaint against Wireless Retail on July 21, 2004 based on her November 4, *528 2002 termination. Wireless Retail and Ra-dioShack entered into the Asset Purchase Agreement on October 1, 2004 — after Plaintiff filed her complaint against Wireless Retail. Plaintiff subsequently learned that Wireless Retail sold.some of its assets to RadioShack, but Wireless Retail remained in business after the sale, continuing to defend against Plaintiffs lawsuit, and even informed Plaintiff that her claim would be covered by the terms of its insurance policy.
On January 30, 2006, Wireless Retail’s counsel informed Plaintiff that Wireless Retail had ceased conducting business as an ongoing entity. It was not until this date, January 30, 2006, that Plaintiff had notice of a possible cause of action against RadioShack. Less than two weeks later, on February 10, 2006, Plaintiff moved to add RadioShack as a party defendant. Because Plaintiff filed her amended complaint against Radioshack within two years after discovering a possible cause of action against RadioShack, her claim against Ra-dioShack does not fall outside the applicable statute of limitations period. Even if, arguendo, the statute of limitations can be said to have begun to run on October 1, 2004 — at the time Wireless Retail and Ra-dioShack entered into the Asset Purchase Agreement — Plaintiffs complaint is still timely because Plaintiff filed her amended complaint on April 11, 2006, which is well within the baseline two-year statute of limitations period. Accordingly, Plaintiffs claim should be deemed timely.
RadioShack’s reliance on Rule 15(c) is misplaced because although Rule 15(c) generally applies in cases where a plaintiff makes a mistake regarding a party’s identity, see Collyer v. Darling, 98 F.3d 211, 220 (6th Cir.1996), the rule only applies when a plaintiff fails “to identify individual defendants when the plaintiff knows that such defendants must be named,.’’ Barrow v. Wethersfield Police Dep’t, 66 F.3d 466, 470 (2d Cir.1995) (emphasis added); see id. (“Rule 15(c) explicitly allows the relation back of an amendment due to a ‘mistake’ concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.”) Wireless Retail had not entered into the agreement with Ra-dioShack at the time Plaintiff filed her complaint and therefore, Plaintiff had no reason to know that RadioShack needed to be named at the time she filed her complaint. It is only reasonable to require Plaintiff to “name those who were known to [her]” or should have been known to her at the time she filed her complaint. See EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1093 (6th Cir.1974). Thus, Rule 15(c) would not bar Plaintiffs amended complaint. I now turn to the merits of Plaintiffs claim.
The FMLA was enacted “to balance the demands of the workplace with the needs of families” and “to entitle employees to take reasonable leave for medical reasons” in a manner that “accommodates the legitimate interests of employers.” 29 U.S.C. § 2601(b)(l)-(3). Under the FMLA, “eligible” employees[3] may take up to twelve weeks of unpaid leave from their employer for certain situations such as the birth of a child. See id. § 2612(a)(1). An “employer” is “any person engaged in commerce or in any industry or activity affecting commerce who employees 50 or more employees” and includes “any person who acts, directly or indirectly, in the interest of an *529 employer to any of the employees of such employer” as well as “any successor- in interest.”[4] Id. § 2611(4)(A). Plaintiffs successor liability claim stems from the Asset Purchase Agreement by which Ra-dioShack purchased a substantial portion of Wireless Retail’s assets. In order for RadioShack to be considered a covered employer under the FMLA, Plaintiff must demonstrate that RadioShack is a successor in interest to Wireless Retail for the purpose of providing Plaintiff with relief pursuant to her FMLA claim.
The regulations implementing the FMLA enumerate several factors to be considered in determining whether an employer is a successor in interest to a previous employer. The factors to be considered include:
(1) Substantial continuity of the same business operations;
(2) Use of the same .plant;
(3) Continuity of the work force;
(4) Similarity, of jobs and working conditions;
(5) Similarity of supervisory personnel;
(6) Similarity in machinery, equipment, and production methods;
(7) Similarity of products or services; and
(8) The ability of the predecessor to provide relief.
29 C.F.R.-§ 825.107(a). “The regulations implementing the FMLA instruct courts to consider the factors ... in determining whether a covered employer is a successor in interest to a previous employer.” Cobb, 452 F.3d at 551 (citing 29 C.F.R. § 825.107) (internal quotation marks omitted); see also Grace v. USCAR & Bartech Technical Servs., LLC, 521 F.3d 655, 671 (6th Cir.2008) (noting that the FMLA regulations require courts to consider these factors when determining whether an employer constitutes a successor in interest). These factors are not, in themselves, the test for successor liability, but rather are merely factors the Court considers in its balancing of equities. Although notice of the employee’s claim is generally irrelevant to determinations regarding successor liability, notice may be relevant in determining successor liability for the predecessor’s violations. 29 C.F.R. § 825.107(a).
Plaintiff claims that the district court erred in analyzing the factors relevant to determining successor liability and misconstrued the relevance of notice in this case. RadioShack counters that its lack of notice is critical to the equitable calculus and that the relevant factors and balance of interests weigh in its favor.
A successor in interest may be held liable for the discriminatory employment practices of the predecessor company. MacMillan, 503 F.2d at 1091. The Court will impose successor liability where it would be equitable to do so considering (1) the defendant’s interest, (2) the plaintiffs interest, and (3) the federal policy embodied in the relevant statutes. Cobb, 452 F.3d at 551-52 (citing MacMillan, 503. F.2d at 1089-91). Whether an employer is a successor in interest is not determined by applying a single criterion, but rather by “the entire circumstances ... viewed in their totality.” 29 C.F.R. § 825.107(b). “The ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy.” Cobb, 452 F.3d at 554. The relevant factors and the balancing • of equities are each addressed in turn below, beginning with Ra-dioShack’s notice of Plaintiffs claim.
*530 The parties do not dispute that throughout most of the litigation process, RadioSh-ack had notice of Plaintiffs claim, which was specifically referenced as an excluded liability in the Asset Purchase Agreement. The parties do, however, dispute the effect of RadioShack’s notice and its disclaimer of liability.
In its notice analysis, the district court relied upon the liabilities exclusion, but such a provision is not dispositive. Wireless Retail and RadioShack cannot contract away RadioShack’s potential FMLA liability to an individual who is not even a party to the contract between them. Indeed, the Supreme Court and this Court have both indicated that a successor can protect itself against potential liability by negotiating the contract price, but there is no authority stating such negotiations eliminate successor liability altogether. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 171-72 n. 2, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) (noting that the successor employer’s “potential liability for remedying the unfair labor practices is a matter which can be reflected in the price [the successor employer] pays for the business, or [the successor employer] may secure an indemnity clause in the sales contract which will indemnify him for liability arising from the seller’s unfair labor practices.”); see also MacMillan, 503 F.2d at 1090 (quoting Golden State, 414 U.S. at 171-72 n. 2, 94 S.Ct. 414). Instead, Ra-dioShack could presumably seek indemnity from Wireless Retail if found liable on Plaintiffs discrimination claim. Accordingly, this factor weighs in favor of finding successor liability.
RadioShack also claims that Wireless Retail’s ability to provide Plaintiff with relief weighs against a finding of successor liability. Specifically, RadioShack claims that Wireless Retail had the ability to provide relief with respect to Plaintiffs claim after entering into the Asset Purchase Agreement as evidenced by Wireless Retail’s receipt of the purchase price and Wireless Retail’s voluntary facilitation regarding the potential settlement of Plaintiffs claim. As asserted by Plaintiff, this factor weighs in favor of successor liability because Wireless Retail has no apparent ability to provide relief for Plaintiffs claim and Wireless Retail intentionally muddied the waters regarding its inability to provide relief by continuing to defend the lawsuit and stating that her claim was covered under Wireless Retail’s insurance policy.
RadioShack further argues that this factor weighs against the imposition of successor liability because of the Co-Employee Notice and Agreement that Plaintiff signed. Plaintiff, however, contends that CNA only printed her paychecks for a period of time, which ended sometime between September 2001 and May 2002. Plaintiff also argues that CNA was never involved with Plaintiffs work or with Plaintiff herself. In support of them respective positions, RadioShack submitted a copy of the signed agreement and Plaintiff submitted a declaration. There is no other evidence regarding CNA’s alleged relationship with Wireless Retail. It is undisputed, however, that after Wireless Retail’s summary judgment motion was denied at the January 30, 2006 hearing, Wireless Retail’s counsel informed Plaintiff that Wireless Retail was out of business and that he intended to file a motion to withdraw as counsel, indicating that the company had ceased as an ongoing entity. Because the primary concern behind the imposition of successor liability is “providing] the discriminatee with full relief,” MacMillan, 503 F.2d at 1092, this factor also weighs in favor of Plaintiff.
Another relevant factor in determining successor liability involves the continuity *531 of business operations. While it is not entirely clear from the record, Wireless Retail’s Sam’s Club kiosk business seems to have comprised a majority of Wireless Retail’s business. At the time of the sale, Wireless Retail employed 3,500 to 4,000 people, 2,400 of whom transferred to Ra-dioShack. RadioShack also purchased all of Wireless Retail's tangible personal property and inventory used to operate the Sam’s Club kiosk business, information systems, training systems, and client and customer lists. In addition, RadioShack purchased Wireless Retail’s lease interest in its Scottsdale headquarters. The extent of RadioShack’s purchase evidences the fact that subsequent to the purchase, Ra-dioShack substantially continued Wireless Retail’s business.
RadioShack counters that there was no substantial continuation of Wireless Retail’s business because pursuant to the Asset Purchase Agreement, Wireless Retail terminated its Sam’s Club contract and RadioShack negotiated its own contract with Sam’s Club. Nonetheless, RadioShack continued to utilize Wireless Retail’s retail outlets and other assets, and RadioShack points to no substantial changes in the operation of the Sam’s Club kiosks post-purchase. Accordingly, this factor weighs in favor of imposing successor liability.
Another relevant factor is the continuity of the workforce. Pursuant to the Asset Purchase Agreement, RadioShack began employing Wireless Retail employees who worked at the Sam’s Club kiosks. This group of employees represented more than half of Wireless Retail’s workforce. Ra-dioShack argues that because Plaintiff frequently worked at non-Sam’s Club locations throughout her employment with Wireless Retail, it is speculative whether, if Plaintiff was still employed by Wireless Retail, she would have been hired by Ra-dioShack in accordance .with the Asset Purchase Agreement. Notwithstanding RadioShack’s speculative conjecture, the application of this factor relates to the continuity of the workforce as a whole and, consequently, also supports the imposition of successor liability.
Related to the continuity of the workforce is the similarity of supervisory personnel. Wireless Retail’s sales supervisors were employees who transferred as part of the transaction between Wireless Retail and RadioShack. However, as RadioSh-ack notes, none of Wireless Retail’s officers transferred to RadioShack as officers. Among RadioShack’s top management team, only Wireless Retail’s Chief Operating Officer transferred over to RadioShack and even then, he only worked there briefly and did so in a different position than the one he held at Wireless Retail. Given this evidence, this factor does not seem to weigh in favor of either party with respect to imposing successor liability.
RadioShack purchased Wireless Retail’s Sam’s Club kiosks, inventory, training systems, and information systems so that it could operate the kiosks. Accordingly, it is reasonable to conclude that Wireless Retail’s employees who transferred over to RadioShack performed the same jobs. Moreover, because RadioShack substantially continued Wireless Retail’s business, naturally, the products and services remained the same. Thus, these factors also weigh in favor of imposing successor liability. The remaining factors — use of the same plant, and similarity in machinery, equipment, and production methods — are more relevant in a manufacturing setting, and therefore, do not weigh in favor of or against the imposition of successor liability.
As previously mentioned, although relevant to determining whether to impose successor liability, the factors examined above are not the test for successor liabili *532 ty. Instead, we must balance the defendant’s interest, the plaintiffs interest, and the federal policy embodied in the relevant statutes, which in this case is the FMLA. Cobb, 452 F.3d at 551-52 (citing MacMillan, 503 F.2d at 1089-91).
The prong of the equitable analysis concerning Plaintiffs interest clearly weighs in favor of imposing successor liability. Plaintiff certainly has an interest in receiving relief under the applicable statute and several of the factors discussed above weigh in her favor. RadioShack purchased specified assets from Wireless Retail and excluded certain liabilities from the transaction, thereby attempting to disclaim liability. However, RadioShack’s “potential liability for remedying the unfair labor practices [of Wireless Retail] is a matter which can be reflected in the price [RadioShack] pa[id] for the business, or [RadioShack could have] securefd] an indemnity clause in the sales contract which [would] indemnify [RadioShack] for liability arising from [Wireless Retail’s] unfair labor practices.” Golden State, 414 U.S. 168, 171-72 n. 2, 94 S.Ct. 414; see Brzozowski v. Corr. Physician Servs., Inc., 360 F.3d 173, 177 (3d Cir.2004) (noting that “the avoidance of labor strife, prevention of a deterrent effect on rights granted employees [by statute], and protection for victimized employees are important goals which can be achieved at minimal cost to a successor” because “[t]he expense resulting from successor liability can be considered in setting the price paid for the business, or through the inclusion of an indemnity clause in the purchase agreement.” (citing Golden State, 414 U.S. at 185, 94 S.Ct. 414)).
We know that RadioShack utilized the latter protective measure in. this case. Ra-dioShack could have also sought other assurances and protected itself in other ways. Moreover, although RadioShack claims it is an innocent successor, we must strike a balance between the conflicting interests involved — those of a victimized employee, those of a successor attempting to disclaim liability, and the purposes and public policies underlying the FMLA.
The FMLA was enacted “to balance the demands of the workplace with the needs of families” and “to entitle employees to take reasonable leave for medical reasons.” 29 U.S.C. § 2601(b)(1) — (2). As this Court stated in Grace v. USCAR & Bartech Technical Servs., LLC, the FMLA’s “focus on the individual employee ... warrants] emphasis on the first prong of the equity analysis; conversely, other labor law issues implicating successor liability (e.g. collective bargaining obligations) more obviously implicate- employees as a collective vis-a-vis their employer’s interests, and, by extension, the second prong of the analysis.” 521 F.3d at 675. In this case, the purposes underlying the FMLA and Plaintiffs interests outweigh RadioShack’s interests. Accordingly, successor liability should be imposed in order to vindicate Congress’ goals and objectives in implementing the statute.
Again, because a majority of the relevant factors weigh in favor of imposing successor liability and because after balancing the equities involved, Plaintiffs interests and the policies embodied in the FMLA outweigh RadioShack’s interests, successor liability should be imposed. Failure to hold RadioShack liable would leave Plaintiff without a remedy. Where, as in this case, “the predecessor company no longer ha[s] any assets, monetary relief would be precluded. Such a result could encourage evasion in the guise of corporate transfers of ownership.” MacMillan, 503 F.2d at 1091-92. Unfortunately, the majority opinion provides perverse incentives and encouragement for companies to do just what Wireless Retail and RadioSh- *533 ack appear to have done in this case— muddy the waters regarding the identity of the proper defendant and prolong the litigation process as much as possible so that an argument like laches, for example, can be inappropriately used to defeat a meritorious claim.
I therefore respectfully dissent.

. Pursuant to 29 U.S.C. § 2617(c)(1), an FMLA claim must generally be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.” However, in the case of willful violations, "such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.” Id. Under ELCRA, an action must be brought within three years of the time of the injury. Garg v. Macomb County Cmty. Mental Health Servs., 472 Mich. 263, 696 N.W.2d 646, 657-58 (2005).

. Both the magistrate judge and the district judge decided that Plaintiff’s amended pleading would be more properly treated as a supplemental pleading since a supplemental pleading is one that sets forth ”transaction[s], occurrencefs], or event[s] that happened after the date of the pleading to be supplemented.” Fed.R.Civ.P. 15(d). Because Plaintiff filed her complaint on July 21, 2004 and because the Asset Purchase Agreement was not entered into until October 1, 2004, Plaintiff's amended complaint should be treated as a supplemental pleading. The distinction between an amended pleading and a supplemental pleading is often disregarded for purposes of relation back under Rule 15(c). See 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1508 (2d ed.1987) (noting that “the policy underlying the statute of limitations is in no way compromised by allowing a supplemental pleading to relate back.”).

. An "eligible” employee is one who has been employed by his or her employer for at least twelve months and has worked at least 1,250 hours during the previous twelve-month period. 29 U.S.C. § 2611(2)(A).

. A “successor in interest" is "[o]ne who follows another in ownership or control of property.” Black’s Law Dictionary 1446 (7th ed.1999).